IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TIMOTHY BROWN | Civil Action No.<br>1:20-cr-00113-SDG-JSA |

### ORDER

This matter is before the Court for consideration of the Report and Recommendation entered by United States Magistrate Judge Justin S. Anand [ECF 73, as corrected ECF 73-1] (the R&R), which recommends that Defendant Timothy Brown's motions to suppress the fruits of warrantless searches of his electronic devices [ECF 32 and ECF 49] and to suppress his statements to law enforcement [ECF 33] be denied. After careful review of the R&R and Brown's objections [ECF 75], and with the benefit of an additional hearing, the Court **OVERRULES** Brown's objections and **ADOPTS** the R&R in its entirety as the opinion of the Court. Brown's motions to suppress are **DENIED**.

### I.   BACKGROUND

Brown was arrested on February 5, 2020.[1] On March 3, 2020, Brown was indicted and charged with knowingly attempting to travel from the United States

---

[1]   ECF 1; ECF 73-1, at 6.

to the Philippines for the purpose of engaging in a commercial sex act with a person under the age of 18, in violation of 18 U.S.C. §§ 2423(b) and 2423(e).[2]

Brown filed a motion to suppress evidence obtained from warrantless searches of his electronic devices and a motion to suppress statements.[3] Brown later supplemented his motion to suppress the search of his electronic devices.[4] Judge Anand held an evidentiary hearing and the parties submitted post-hearing briefs.[5] On April 30, 2021, Judge Anand issued the R&R,[6] recommending that the Court deny the motions to suppress because the searches were performed within the border search exception to the warrant requirement and because Brown's statements to law enforcement were made voluntarily and in compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966). Brown objected to the R&R.[7] On August 20, 2021, the Court held a hearing on Brown's motions.

---

[2] ECF 12.

[3] Respectively, ECF 32 and ECF 33.

[4] ECF 49.

[5] ECF 62; ECF 69; ECF 72.

[6] ECF 73-1.

[7] ECF 75.

## II. LEGAL STANDARD

A party challenging a report and recommendation issued by a United States Magistrate Judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009); Fed R. Crim P. 59(b)(2). The district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990); Fed. R. Crim. P. 59(b)(3). Absent objection, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). "Frivolous, conclusive, or general objections need not be considered . . . ." *Schultz*, 565 F.3d at 1361 (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

## III. DISCUSSION

Brown objects to the R&R by adopting the arguments made in his motions and his post-hearing briefs.[8] He specifically objects to Judge Anand's findings that: (1) the initial search of Brown's phone constituted a border search and therefore

---

8   ECF 75.

did not require a warrant or probable cause; (2) the subsequent search of Brown's phone, conducted after his arrest, was within the scope of the initial border search; (3) the agent's failure to follow Customs and Border Protection (CBP) Administrative procedures did not require exclusion of the phone evidence; (4) Brown was not subject to a custodial interrogation on February 3, 2020, and, therefore, was not entitled to a *Miranda* warning; and (5) Brown voluntarily waived his *Miranda* rights in connection with his statement on February 5, 2020, following his arrest. The Court will address each objection in turn.

### A.     The Initial Search of Brown's Phone Constituted a Border Search.

On February 3, 2020, based on information that Brown was potentially attempting to export images of child exploitation on his phone,[9] Special Agent Mathew DeVane of Homeland Security Investigations approached Brown at a boarding gate at Atlanta Hartsfield-Jackson International Airport and escorted him to an interview room.[10] After placing the devices on Airplane Mode to disconnect from any internet or cellular connection,[11] Special Agent DeVane

---

[9]   ECF 73-1, at 3.

[10]  *Id.* at 2.

[11]  At the August 20, 2021 hearing, the government proffered, without objection, that Agent DeVane placed the devices in Airplane Mode and the devices remained in Airplane Mode throughout each search.

searched Brown's phone and iPad after unlocking them with Brown's fingerprint and a password, which Brown voluntarily provided.[12] When asked, Brown affirmatively indicated that the devices may contain sexually exploitive images of children.[13] Special Agent DeVane did not find any images in his manual search, and therefore connected Brown's phone to an electronic search device, known as Cellbrite.[14] Brown was then taken to another inspection room in the concourse, where he signed a *Miranda* waiver and was questioned further.[15] Though Brown was permitted to leave, Special Agent DeVane kept the electronic devices for further inspection.[16] Through this subsequent search, Special Agent DeVane found messages suggesting that Brown was traveling to the Philippines to engage in commercial sex with minors.[17]

The Court agrees with Judge Anand's conclusion that the searches of Brown's electronic devices fall within the border search exception to the warrant requirement. "[S]earches at the border of the country never require probable cause

---

[12]  *Id.* at 3.

[13]  *Id.* at 3–4.

[14]  *Id.* at 4.

[15]  *Id.*

[16]  *Id.* at 5.

[17]  *Id.*

or a warrant." *United States v. Touset*, 890 F.3d 1227, 1232 (11th Cir. 2018) (cleaned up) (quoting *United States v. Vergara*, 884 F.3d 1309, 1312 (11th Cir. 2018) and *United States v. Ramsey*, 431 U.S. 606, 619 (1977)). The reason being, "[i]mport restrictions and searches of persons or packages at the national borders rest on different considerations and different rules of constitutional law from domestic regulations." *Id.* (quoting *United States v. 12 200-Ft. Reels of Super 8MM Film*, 413 U.S. 123, 125 (1973)). Under its plenary authority, Congress has broad powers "[t]o regulate Commerce with foreign Nations," including "prevent[ing] smuggling and [ ] prevent[ing] prohibited articles from entry." *12 200-Foot Reels of Super 8MM Film*, 413 U.S. at 125 (quoting U.S. Const. art. I, § 8, cl. 3). Relevant here, "because child pornography is unprotected by the First Amendment, 'Congress may declare it contraband and prohibit its importation.'" *Touset*, 890 F.3d at 1232 (quoting *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 376–77 (1971)). *See also Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("[W]e cannot fault [the government] for attempting to stamp out [child pornography] at all levels in the distribution chain.").

The Eleventh Circuit has held that the exact kind of search performed by Special Agent DeVane falls within the border search exception to the warrant requirement and does not require reasonable suspicion. *Touset*, 890 F.3d at 1233–

35 (holding that the Fourth Amendment does not require *any* suspicion for a forensic search of an electronic device conducted at the airport). In particular, the circuit court found that, "[a]lthough it may intrude on the privacy of the owner, a forensic search of an electronic device is a search of property. And our precedents do not require suspicion for intrusive searches of any property at the border." *Id.* at 1234.

Nor does the outbound nature of Brown's travel remove the search from the border search exception to the warrant requirement. "Every circuit that has considered the question has ruled that the rationales for the 'border exception apply both to incoming and outgoing persons and instrumentalities.'" *United States v. Hernandez-Salazar*, 813 F.2d 1126, 1137 (11th Cir. 1987) (finding that "Congress may, consistent with the fourth amendment, authorize Customs officers to conduct warrantless searches of persons and property departing the United States on the basis of reasonable suspicion"). The Court agrees with Judge Anand's conclusion that the governmental interest in preventing international dissemination of illegal images of child pornography permits outbound warrantless border searches to attempt to prevent such conduct.

The Court therefore finds that the initial warrantless searches of Brown's electronic devices fall within the border search exception and the fruits of those searches will not be suppressed.

**B.     The Continued Search of Brown's Phone Following His Arrest Falls Within the Scope of the Border Search Exception.**

Approximately two weeks after Brown was arrested, Special Agent DeVane provided Brown's phone, which remained in Airplane Mode, to a forensic analyst who performed a GrayKey data extraction search.[18] Brown argues that this search constituted a warrantless phone search incident to arrest, prohibited under *Riley v. California*, 573 U.S. 373, 387 (2014), and that evidence resulting therefrom must be suppressed.

Several courts have found that "the border exception is not rendered inapplicable because a search initiated at a border ultimately is conducted at some physical or temporal remove." *United States v. Kolsuz*, 890 F.3d 133, 142 (4th Cir. 2018), *as amended* (May 18, 2018) (collecting cases). "Nor . . . does the fact of [Brown]'s arrest transform the examination of his phone into a search incident to arrest, triggering *Riley* and calling for a search warrant based on probable cause."

---

[18] ECF 73-1, at 6–7. A GrayKey device is a tool specifically designed to extract data from iPhones. ECF 69, at 6. GrayKey is capable of extracting more data from an iPhone than Cellbrite.

*Id.* The key consideration for whether a search falls within the border exception is its purpose. *Id.* at 143 ("As a general rule, the scope of a warrant exception should be defined by its justifications."). Where a search is conducted in furtherance of the government's "generalized interest in law enforcement and combatting crime," for example, it does not fall within the purpose of the border search exception, which, as stated, is to prevent the importing or exporting of contraband. *Id. See also 12 200-Foot Reels of Super 8MM Film*, 413 U.S. at 125; *Osborne*, 495 U.S. at 111.

Here, the continued search of Brown's phone occurred physically and temporally removed from the border. What's more, Brown had already been arrested. There existed no urgent or compelling circumstances to necessitate a warrantless search because the government already maintained physical custody and control over Brown's electronic devices. Yet, the Court concludes that the government was not legally wrong in proceeding as it did. As Special Agent DeVane testified, an off-site forensic search was necessary to confirm that no exploitive images of children existed on the phone.[19] Based on Agent DeVane's unrebutted testimony, this search was done primarily, even if not exclusively, for

---

[19]   ECF 73-1, at 15–16.

the purpose of preventing the potential international dissemination of child pornography. Further, Brown never "regained an expectation of privacy in" his phone because the border search was continuous. *United States v. Stewart*, 729 F.3d 517, 525 (6th Cir. 2013) (off-site testing conducted after seizure of electronic device was a border search).

The Court is not persuaded by Brown's argument that the GreyKey search of his phone was unconstitutional because the process is illusive and invasive. It is undisputed that the phone was not using cellular service or connected to the internet at the time of the GreyKey search, and so any tool used to conduct the search fell within the permissible bounds of what existed on the hardware of the phone itself. Had the agents searched internet servers or cloud-based accounts, this would have gone beyond the purpose of the border search exception, which is to uncover contraband at the border to prevent importation or exportation. But that is not what occurred here.

Nevertheless, this Court is troubled by the expansive scope of the border search exception as applied to personal electronic devices, particularly following an arrest where the electronic devices are already in the custody of law enforcement. But that is the state of the law in this Circuit and others. As the Eleventh Circuit has noted, it is within Congress's province, not the judiciary's, "to

strike a balance between privacy and security in the context of digital searches." *Touset*, 890 F.3d at 1236 (quoting *Kolsuz*, 890 F.3d at 150). The Court concludes that the continued search of Brown's phone constituted a permissible warrantless search under the border search exception; the fruits of that search will not be suppressed.

### C. Failure to Follow CBP Procedure Does Not Require Exclusion.

Brown also objects to Judge Anand's finding that Special Agent DeVane's failure to follow CBP administrative rules governing border searches did not require suppression of the phone evidence.[20] Specifically, Brown argues that suppression is required because Special Agent DeVane failed to obtain supervisory approval before forensically searching his electronic devices and detaining his property for over five days, and that he failed to give Brown notice and an opportunity to be present during the searches in violation of CBP procedure. CBP Directive #3340-049A, Border Searches of Electronic Devices (2018).

The Supreme Court has cautioned that "a rigid application of an exclusionary rule to every regulatory violation could have a serious deterrent

---

20   ECF 75, at 6.

impact on the formulation of additional standards to govern prosecutorial and police procedures." *United States v. Caceres*, 440 U.S. 741, 755–56 (1979). Accordingly, exclusion based on a failure to follow regulatory procedure is only warranted if (1) the procedure is mandated by the Constitution or (2) the defendant reasonably relied on the procedure in governing his conduct. *Id.* at 749–53. *See also United States v. Teers*, 591 F. App'x 824, 839 (11th Cir. 2014).

Even assuming that Special Agent DeVane was required, and failed, to follow the CBP procedure, Brown has failed to show that any of the rules were independently mandated by the Constitution, or that Brown reasonably relied to his detriment on any belief that Special Agent DeVane was following these administrative rules. The Court agrees with Judge Anand's finding that suppression is not warranted under these circumstances.

**D.    The February 3, 2020 Inquiry Was Not a Custodial Interrogation.**

Brown moves to suppress the statements he made to Special Agent DeVane on February 3, 2020. He objects to Judge Anand's findings that he was not subject to a custodial interrogation, and therefore was not entitled to *Miranda* rights.

In *Miranda*, the Supreme Court held that law enforcement must advise any suspect in custody of his right to remain silent and to the assistance of counsel prior to any interrogation. 384 U.S. at 444. As a threshold matter, therefore, the

Court must determine whether Brown was in custody when Special Agent DeVane approached him and escorted him to the interview room near the airport terminal. Whether Brown was in custody "depends on whether 'under the totality of the circumstances, a reasonable man in [his] position would feel a restraint on his freedom of movement . . . to such extent that he would not feel free to leave.' The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001) (internal citations omitted) (quoting *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996)).

More specifically, and as noted by the Eleventh Circuit, the Supreme Court has stated that whether a suspect is 'in custody' turns on whether restrictions on the suspect's freedom of movement are of the degree associated with formal arrest. *McDowell*, 250 F.3d at 1362. Where, as here,

> a suspect is detained in a border zone, whether interrogation is "custodial" should be interpreted in light of the strong governmental interest in controlling the borders. . . . Due to the sovereign's responsibility, "some degree of questioning and of delay is necessary and to be expected at entry points into the United States. Because of this expectation, questioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam to the degree associated with formal arrest."

*Id.* (quoting *Moya*, 74 F.3d at 1119–20).

Judge Anand found that Special Agent DeVane's questioning of Brown was not a custodial interrogation because it was of short duration and proceeded by a polite request "to ask [Brown] some questions." Brown was not restrained, and the interview took place in a room right next to a jetway, indicating that it was a temporary encounter.[21] Judge Anand also found that the interview room, although locked, was done so for privacy reasons and that Special Agent DeVane's questions of Brown were not distinctly accusatory.[22] The Court agrees. The totality of the circumstances, particularly considering that it occurred at the border, does not show that Special Agent DeVane's questioning of Brown constituted a custodial interrogation. The Court will not suppress Brown's statements to law enforcement made on February 3, 2020.

### E. Brown Voluntarily Waived His *Miranda* Rights on February 5, 2020.

Brown also objects to Judge Anand's findings that he voluntarily waived his *Miranda* rights following his arrest on February 5, 2020. After Brown was permitted to leave the airport on February 3, Special Agent DeVane found communications on Brown's electronic devices indicating that he intended to

---

[21] ECF 73-1, at 26–27.

[22] *Id.* at 26.

travel to the Philippines for the purpose of commercial sex with minors.[23] Based on these messages, Special Agent DeVane sought and obtained a criminal complaint charging Brown with traveling to engage in illicit sexual conduct.[24] Special Agent DeVane subsequently called Brown and discovered that he was in the hospital due to chest pains. Special Agent DeVane instructed Brown to come to the airport following his discharge to pick up his electronic devices.[25]

When Brown arrived at the airport, he was arrested.[26] Brown made oral and written statements waiving his *Miranda* rights and expressing that he was willing to talk.[27] Special Agent DeVane testified that Brown did not appear to be under the influence of drugs or medication, and the agents did not threaten Brown with statements or by showing any weapons.[28] Brown argues, nonetheless, that his waiver was involuntary because (1) his release from the hospital prevented him from understanding the written waiver and (2) the agents unduly coerced Brown

---

[23]   ECF 73-1, at 5.
[24]   *Id.*
[25]   *Id.*
[26]   *Id.*
[27]   *Id.* at 28.
[28]   *Id.*

by telling him he could end up as a "small fish" if he helped them catch the "big fish" by cooperating and allowing the agents to use his online persona.[29]

The Fifth Amendment to the Constitution protects a person's right against self-incrimination. As discussed, *Miranda* requires that a person be advised of his constitutional rights, including the right against self-incrimination, before a custodial interrogation. 384 U.S. at 444; *United States v. Roark*, 753 F.2d 991, 992 (11th Cir. 1985). This "reflects the concern that the compulsive or coercive aspects of a custodial situation will cause a suspect to confess or to make incriminating statements involuntarily. . . . *Miranda* made clear," however, "that '[a]ny statement given freely and voluntarily without any compelling influences' is admissible." *Roark*, 753 F.2d at 992 (quoting *Miranda*, 384 U.S. at 478). The Government bears the burden to show that a defendant's custodial statements were made voluntarily. *Jackson v. Denno*, 378 U.S. 368, 386 (1964).

The voluntariness of a confession is evaluated on a case by case basis and depends on the totality of the circumstances. *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1362 (11th Cir. 1984). Particularly where a party waives his *Miranda* rights, "the relinquishment of the right must have been voluntary in the sense that

---

[29]   ECF 75, at 5.

it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Moreover, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* In sum, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal[s] both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.*

The Court agrees with Judge Anand that Brown voluntarily waived his *Miranda* rights before he was custodially interrogated on February 5, 2020. Although not independently sufficient, Brown's oral and written statements are "strong proof of the validity of that waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Brown fails to show how the fact that he had just been released from the hospital, without more, incapacitated him to a point where he could not understand that he was waiving his *Miranda* rights. Further, encouraging Brown to cooperate by informing him of the benefits of cooperation is not inherently coercive. *United States v. Davidson*, 768 F.2d 1266, 1271 (11th Cir. 1985) (agent's post-arrest statement that prosecutor could recommend a shorter sentence if defendant cooperated did not render confession involuntary). The Court finds that

Brown voluntarily waived his *Miranda* rights following his arrest on February 5 and will not suppress his statements.

## IV.    CONCLUSION

Brown's objections [ECF 75] are **OVERRULED**. The R&R [ECF 73-1] is **ADOPTED** in its entirety as the **ORDER** of this Court. Brown's motions to suppress [ECF 32; ECF 33; and ECF 49] are **DENIED**.

**SO ORDERED** this the 27th day of August 2021.

                                              _____
                                              Steven D. Grimberg
                                              United States District Court Judge